UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
At Winchester

UNITED STATES OF AMERICA,
    Plaintiff,

                      No. 4:18-cr-038-CLC-CHS

    v.

BRAD ANTHONY MAJORS,
    Defendant.

**MOTION FOR DOWNWARD VARIANCE FROM THE ADVISORY GUIDELINES
AND SENTENCING MEMORANDUM IN SUPPORT THEREOF**

      The Defendant, Brad Majors, by and through undersigned counsel, Assistant Federal Defender, Jackson Whetsel, hereby requests this Honorable Court to impose a sentence below the advisory sentencing guideline range. As noted by the Presentence Investigation Report, ("PSR," Doc. 28), the applicable sentencing guideline range is 600 months.

      While Mr. Majors agrees that this range is the correct starting point for any downward variance to be considered in this matter, he avers that any sentence imposed from within this excessive range would result in a sentence that is far greater than necessary under 18 U.S.C. § 3553(a). He requests that the Court vary from the advisory guidelines and thereafter impose a sentence closer to the statutorily mandated range for Count 1, which is 15 to 30 years, or 180 to 360 months. Mr. Majors defers to the Court's sound discretion in determining the specific sentence and extent of any variance.

**REQUEST FOR CONCURRENT SENTENCING**

      Mr. Majors has been charged with, and pled guilty to, two counts of the two-count Indictment. Doc. 1. Count One charged him exploitation, and Count Two charged possession.

Id.  Mr. Majors asserts that the gravity and severity of the offense as a whole is adequately captured in Count One.  The punishment for Count Two should run concurrently with the sentence in Count One to avoid a sentence that is greater than necessary under the factors enumerated in 18 U.S.C. § 3553.

In requesting that the sentences for the two counts run concurrently, Mr. Majors acknowledges USSG § 5G1.2(d), which is referenced in paragraph 91 of the PSR.  Doc. 28.  This section of the guidelines provides that "[i]f the sentenced imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, *but only to the extent necessary to produce a combined sentence equal to the total punishment*."  (emphasis added).

The statutory mandated range for Count 1 is 15 to 30 years, or 180 months to 360 months.  The offense level indicated in the PSR is 43, which results in a sentence of life.  Doc. 28, ¶ 91.  Therefore, under the plain reading of 5G1.2(d), the sentence for Count 2 should run consecutively to Count 1 to the extent necessary to produce a combined sentence of life.  Mr. Majors asserts that a combined sentence of 600 months (Doc. 28, ¶ 91) is excessive and reaches beyond a sentence of "life."  600 months is equal to 50 years.  As Mr. Majors is 37 years old, a sentence at that guideline range would be excessive.

Further, the guidelines are advisory.  *United States v. Booker*, 543 U.S. 220 (2005).  This Honorable Court is not bound by the guideline range, nor is it bound by the consecutive sentencing structure outlined in USSG § 5G1.2(d).  The guideline range is but one of the sentencing factors enumerated in 18 U.S.C. § 3553, and a sentence in that range would be greater than necessary and would not achieve the other relevant sentencing factors.

## **STATUTORY FACTORS SUPPORT A DOWNWARD VARIANCE**

Mr. Majors respectfully submits that a variance could be warranted in his case, as the advisory guidelines recommend a sentence that is far greater than necessary to achieve the statutory purpose envisioned by 18 U.S.C. § 3553(a). He asks the Court to not only consider his history and characteristics, which result in only one criminal history point and no other allegations similar or related to the indicted conduct, but also the following additional information as grounds for a downward variance:

Pursuant to 18 U.S.C § 3553(a), the Court is provided with a list of factors to consider in arriving at a sentence which will further the required purposes of sentencing and result in a sentence that is sufficient, but not greater than necessary, to accomplish those goals. While this Court must consider the guideline range, it nonetheless maintains the authority to impose a sentence below the advisory range of 600 months. The Court may reject a guideline sentence because of the unique facts of the case or the characteristics of the individual defendant. Likewise, the Court may reject a guideline sentence "based solely on policy considerations, including disagreements with the guidelines." *Kimbrough v. United States*, 552 U.S. 85 (2007). The Court determines the sentence with consideration of the factors in 18 U.S.C. § 3553(a), one of which is the calculated guideline range:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and

3

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines
> (5) any pertinent policy statement;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

When the guidelines system was rendered advisory by *United States v. Booker*, 543 U.S. 220 (2005), it maintained its relevance as one of the sentencing factors under 18 U.S.C. § 3553, namely, subsection (a)(4). Id. at 266. A court may not elevate the guidelines above other sentencing factors because sentencing is always about the appropriate punishment for the individual defendant. *Pepper v. United States*, 131 S. Ct. 1229, 1249 (2011) (a court may not "elevate [one or] two § 3553(a) factors above all others.").

> "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams*, 337 U.S., at 247, 69 S.Ct. 1079, 93 L.Ed. 1337; see also *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 82 L.Ed. 43 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender.").
>
> *Pepper*, 131 S.Ct. at 1239-40.

Accordingly, a sentencing court must consider the guidelines range but must also "tailor the sentence in light of other statutory concerns as well." Id. at 245-46.

Congressionally directed guidelines are just as advisory as any other guideline and are therefore equally subject to policy-based variances. In *Vazquez v. United States*, 130 S. Ct. 1135

4

(2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General Kagan's position that "all guidelines," including congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." U.S. Br. at 11, *Vazquez v. United States*, No. 09-5370 (Nov. 2009). As the Sixth Circuit has previously recognized, "all of the sentencing guidelines are advisory," including those directed by Congress. *United States v. Michael*, 576 F.3d 323, 327 (6th Cir. 2009) (emphasis in original). Congressional directives "tell[] the Sentencing Commission, not the courts, what to do," and "a directive that the Commission specify a particular Guidelines range is not a mandate that sentencing courts stay within it." Id. at 328.

Additionally, "since the child pornography Guidelines do not fully describe the current sentencing practices of district courts or adequately differentiate between the least and worst offenders, courts cannot [depend on them] to be a reliable assessment of a sentencing range that approximates the § 3553(a) factors in a typical child pornography case." *United States v. McElheney*, 630 F. Supp. 2d 886, 901-02 (E.D. Tenn. 2009), citing *United States v. Johnson*, 588 F. Supp. 2d 997, 1004 (S.D. Iowa 2008).

The child pornography guidelines have been described by some district courts as "seriously flawed." *United States v. Bistline*, 665 F.3d 758 (6th Cir. 2012). The child pornography guidelines have been driven by Congressional mandates and not by empirical studies or data. *Id.* Therefore, the guideline range for these crimes are not supported by data that show sentences within the guideline scheme achieve the sentencing factors any better than a lesser sentence.

5

## 2015 SENTENCING COMMISSION REPORT

The sentencing guidelines have lost their effectiveness in child pornography cases. In fiscal year 2015, out of 415 child pornography cases sentenced under guideline §2G1.1, only 175, or 42%, received a sentence within the guideline range.[1] Data from the Sentencing Commission shows that only 2% received a sentence above the range. When considering all types of departures and *Booker* variances, a staggering 56% of defendants received a sentence below the advisory range. Mr. Major's request for a downward variance would result in a sentence that is in conformity with sentences received by other defendants across the country. Thus, a disparity in sentencing would not be created by a downward variance in this case.

## LOW RISK OF RECIDIVISM

Mr. Majors is a low risk to recidivate. He has no prior crimes that are similar in nature to the instant offense. He has only one criminal history point which resulted from a DUI conviction in 2007. Further, Mr. Majors underwent a psychosexual evaluation performed by Dr. J. Michael Adler, Ph.D. Dr. Adler was able to determine that Mr. Majors "is absent of criminal anti-social thinking." (Psychosexual Evaluation, "Evaluation," Exhibit 1). As for risk of reoffending, Mr. Majors graded out as a low to moderate risk of reoffending with a positive prognosis for being amenable to treatment. (Evaluation).

Mr. Majors is not of an anti-social, criminal mindset. He does not have other, relevant mental health issues. He does not suffer from addiction to alcohol or controlled substances. He is sorrowful and remorseful for his actions. Once confronted with the allegations, he confessed

---

[1] See U.S. Sentencing Commission Final Quarterly Data Report, 2015, page 20.
http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterlysentencing-updates/USSC-2015_Quarterly_Report_Final.pdf

6

nearly immediately, made statements of remorse, and requested treatment. All of these factors weigh in favor of being amenable to treatment and a low risk of reoffending.[2]

Respectfully Submitted,

FEDERAL DEFENDER SERVICES
  OF EASTERN TENNESSEE, INC.


By:  *s/ Jackson Whetsel*
      Jackson Whetsel
Assistant Federal Defender
835 Georgia Avenue, Suite 600
Chattanooga, TN 37402
Jackson_Whetsel@fd.org
(423) 756-4349
BPR# 031886

---

[2] Mr. Majors will call Dr. Adler as a witness at the sentencing hearing to provide details as to the Psychosexual Evaluation, risk of reoffending, amenability to treatment, and relevance of certain factors considered by the guidelines.

7